UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ASHLEY ERIN HUNT,

                         Plaintiff,

v.

                         Case # 16-CV-518-FPG

                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

Ashely Erin Hunt ("Hunt" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 11. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On November 27, 2012, Hunt protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 110-11. She alleged that she had been disabled since November 1, 2011 due to a disc injury in her neck, back pain, migraines, and depression. Tr. 143. On July 24, 2014, a hearing was held before Administrative Law Judge Grenville W. Harrop, Jr. ("the ALJ") at which Hunt and a vocational expert ("VE") appeared and testified. Tr.

---

[1]     References to "Tr." are to the administrative record in this matter.

1

29-59. On November 6, 2014, the ALJ issued a decision finding that Hunt was not disabled within the meaning of the Act. Tr. 11-25. On May 27, 2016, the Appeals Council denied Hunt's request for review. Tr. 1-5. Thereafter, Hunt commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.    Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Hunt's claim for benefits under the process described above. At step one, the ALJ found that Hunt had not engaged in substantial gainful activity since her alleged onset date. Tr. 13. At step two, the ALJ found that Hunt has the following severe impairments: degenerative disc disease of the cervical spine and migraines. Tr. 13-14. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 14.

Next, the ALJ determined that Hunt retained the RFC to perform sedentary work[2] with additional limitations. Tr. 14-23. Specifically, the ALJ found that Hunt can sit for six hours and stand and/or walk for two hours in an eight-hour workday; must have the option to alternate between sitting and standing; can lift and carry up to 10 pounds; can frequently reach, handle, finger, push, pull, balance, stoop, kneel, crouch, crawl, and climb stairs, ladders, ramps, scaffolds, and ropes. Tr. 14.

At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Hunt from performing her past relevant work. Tr. 23. At step five, the ALJ relied on the VE's testimony and found that Hunt can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 24. Specifically, the VE testified that Hunt could work as a telephone solicitor, final assembler, and charge account clerk. Tr. 24. Accordingly, the ALJ concluded that Hunt was not "disabled" under the Act. Tr. 24-25.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

**II.     Analysis**

Hunt argues that remand is required because the ALJ violated the treating physician rule.[3] ECF No. 10-1, at 16-21. Specifically, Hunt asserts that the ALJ failed to provide the requisite "good reasons" for assigning only "little weight" to the opinions of Tariq N. Ahmed, M.D. ("Dr. Ahmed"), Conrad R. Williams, M.D. ("Dr. Williams"), William N. Capicotto, M.D. ("Dr. Capicotto"), and nurse practitioner Ricardo Melendez ("NP Melendez"). *Id.* The Court agrees.

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and

---

[3] Hunt advances other arguments that she believes require reversal of the Commissioner's decision. ECF No. 10-1, at 14-16, 19-21. However, because the Court disposes of this matter based on the ALJ's violation of the treating physician rule, those arguments need not be reached.

laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. §§ 404.1527(c)(1)-(6).

Here, the ALJ made a broad statement that he was affording "little weight" to the opinions of Drs. Ahmed, Williams, Capicotto, and NP Melendez[4] because "they are nonspecific; however, the opinions do reflect the lack of evidence to substantiate [Hunt]'s allegations that [s]he has an impairment that is totally disabling." Tr. 22. Although the regulations permit an ALJ to discount a medical opinion that is unsupported by objective evidence, 20 C.F.R. § 404.1527(c)(3), the Court finds that this vague statement rejecting four medical opinions at once is insufficient. As explained in Social Security Ruling 96-2p, an ALJ's decision "must contain *specific reasons* for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be *sufficiently specific to make clear to any subsequent reviewers* the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) (emphasis added). It is not clear to the Court based on the ALJ's one sentence explanation why he assigned only little weight to all four of these opinions.

---

[4] The Court notes that NP Melendez's opinion was not entitled to controlling weight or the same degree of deference as the treating physicians' opinions because he is a nurse practitioner and therefore is not an "acceptable medical source." *See* S.S.R. 06-03-p, 2006 WL 2329939, at *1-2 (S.S.A. Aug. 9, 2006); *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order) (citations omitted). Nonetheless, opinions from "other sources" are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03-p, 2006 WL 2329939, at *3. The SSA's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). An ALJ must weigh opinions from other sources based on the factors set forth in the regulations, 20 C.F.R. § 404.1527(c)(1)-(6), and he or she should "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning[.]" S.S.R. 06-03p, 2006 WL 2329939, at *6. Here, the ALJ did not weigh NP Melendez's opinion in accordance with the regulations or otherwise sufficiently explain why he discounted that opinion.

The Commissioner argues that the ALJ did not err because these medical sources all opined that Hunt was disabled, which is "an issue reserved to the Commissioner" and therefore those opinions are not entitled to controlling weight. ECF No. 11-1, at 25; *see, e.g.*, Tr. 259, 264, 362, 372, 396, 501 (medical records stating that Hunt was disabled). It is true that the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and that a medical source's statement that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must find that claimant disabled. 20 C.F.R. § 404.1527(d)(1). However, the ALJ was still obligated to explain why he refused to credit the findings of these four medical sources even though they opined on an issue reserved to the Commissioner. *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (finding that the district court erred when it held that, because the treating physician's opinion went to issues reserved to the Commissioner, the plaintiff was not entitled to an explanation of the reasons why the ALJ refused to credit the treating physician's findings). The Second Circuit has explained that:

> Reserving the ultimate issue of disability to the Commissioner relieves the [SSA] of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . *to explain why* a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable.

*Snell*, 177 F.3d at 134 (emphasis added). Moreover, the ALJ never stated that he was discounting these opinions because they went to an issue reserved to the Commissioner. The Commissioner may not substitute her own rationale when the ALJ failed to provide one. *Id.* ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted).

7

Accordingly, for all the reasons stated, remand is required because the ALJ did not provide good reasons for rejecting the opinions of Drs. Ahmed, Williams, and Capicotto and did not properly weigh the opinion of NP Melendez.

**CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 17, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court